■ In the Matter of ROCKVILLE NURSING CENTER, INC., Appellant, v DAVID AXELROD, as Commissioner of the New York State Department of Health, et al., Respondents. — Judgment, Supreme Court, New York County (Sutton, J.), entered September 4, 1980, which denied and dismissed the petition, unanimously reversed, on the law, without costs, and the petition granted to the extent of annulling the September 14, 1979 determination of the respondent Department of Health and remanding for a hearing on the issue of allowance of 50% of the rental payments under the lease in the computation of the applicable Medicaid reimbursement rate. The lease under which petitioner Rockville Nursing Center, Inc., operates dates back to 1966. In July of that year, one of Rockville's present principals, Isaac Putterman, entered into a 20-

year lease with Rickvale Corporation, whose shareholders apparently had no relationship with Rockville. That lease contained an option for tenant Putterman to purchase a one-half interest in the fee. The lease transaction was approved by the State Department of Social Welfare, which then had jurisdiction of such matters, and rental payments under the lease have been calculated in reimbursement formulae from the opening of the facility in December, 1969 until the administrative determination now under review. In July, 1970, Putterman assigned the lease, except for the option to purchase, to his then wholly owned corporation Rockville Nursing Center, Inc. In April, 1971 Putterman transferred a one-half interest in the corporation to Jesse Krauss. By this time, Krauss had obtained a one-half interest in the option to purchase as well. In April, 1973 Putterman and Krauss exercised the option to purchase and thus the tenants obtained 50% of the shares of the landlord, Rickvale Corporation. Since that time, Rickvale Corporation has conveyed the premises to its shareholders as tenants in common, and Putterman and Krauss each now own a one-quarter interest in the fee. Without a hearing, the State Department of Health concluded that the subject facility's lease arrangement was "*non* arms length in nature" and for that reason excluded rental costs from reimbursable capital expenses. Two errors require that the determination be annulled. First, respondent's own regulations provide the relevant standards to be applied to a lease transaction in order for payments thereunder to be reimbursable. Those standards are that the lease be bona fide, valid, noncancelable and reasonable. On this record, the only basis for the conclusion that the lease arrangement was "*non* arms length in nature" is that at the present time the principals of the tenant facility are also some of the landlord tenants in common. However, in this case the lease transaction and the material terms thereof were fixed prior to the time this common identity came about. Further, this common identity arose pursuant to the exercise of an option to purchase contained in the original 1966 lease. The original lease, including the option to purchase, was approved by respondent's predecessor and found to be a proper basis for reimbursement of rental costs. The common identity of landlord and tenant parties has existed since the April, 1973 exercise of the option to purchase and this event did not affect the inclusion of rental costs in the computation of reimbursement. In this light, we do not see a conclusive basis on which it can be said that the lease was not bona fide. That the relationship between landlord and tenant is no longer arm's length in nature does require analysis of the bona fide character of any modification of the lease antedating the exercise of the option to purchase. It appears to us from a reading of the administrative determination that respondent employed an erroneous analysis of the lease transaction and, as such, the determination must be stricken as arbitrary and capricious and the matter remanded for further proceedings. Second, respondent's own regulations require a hearing when a proposed rate revision is disputed. Such a hearing cannot be avoided on the basis that there are no factual issues in question as the *bona fides* and certainly the reasonableness of the lease arrangement and its cost present mixed questions of law and fact. Upon petitioner's timely request for a hearing, respondent was obligated to hold a hearing to allow petitioner the opportunity to present its challenge to the proposed revision in the reimbursement rates. We see no merit in respondent's contention that their regulations do not permit reimbursement based upon only a portion, in this case 50% of the rental costs. Respondent's regulations specifically allow the department to approve only a portion of the total payments under a lease to qualify as a basis for computation of capital cost reimbursement (10 NYCRR 86-2.21 [c] [1] [iii]; [c] [2]; [f] [1]). Here, petitioner's request has, in the course of this proceeding, been

limited to including in the basis for reimbursement calculations the one half of the rental payments which the facility is legally obligated to pay to those tenants in common who allegedly have no relation to the tenant facility. Concur — Kupferman, J. P., Birns, Sandler and Fein, JJ.