In the Matter of WHITE PLAINS NURSING HOME, Respondent-Appellant, v DAVID AXELROD, as Commissioner of the Department of Health, et al., Appellants-Respondents.

Third Department, October 15, 1987

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Clifford A. Royael* of counsel), for David Axelrod, appellant-respondent.

*Suzanne Antippas* for respondent-appellant.

### OPINION OF THE COURT

MAIN, J. P.

Petitioner is a partnership operating a nursing home in New York City. In 1975, respondent Department of Health (hereinafter Department) reduced petitioner's Medicaid realty reimbursement rate because the lease under which petitioner operates the nursing home was not the result of an "arm's length" transaction *(see, Matter of White Plains Nursing Home v Whalen,* 53 AD2d 926, *affd* 42 NY2d 838, *cert denied* 434 US 1066). Subsequently, this court ordered that petitioner be paid at its original reimbursement rate pending a hearing on the issue of the legitimacy of the lease *(Matter of White Plains Nursing Home v Whalen,* 60 AD2d 726). The result of that hearing was a finding that the lease was not the product of arm's length negotiations because there was a familial relationship between some of petitioner's principals and some of the landlord's principals. Due to this finding, it was necessary for the Department to compute a new reimbursement rate reflecting the nature of the lease. Because petitioner could not provide records showing the construction costs of the nursing home, Department appraisers visited the facility and developed a current cost estimate for the facility, using the "Marshall Valuation Service Manual". The current cost estimate was then trended back to the date when construction of the facility was commenced, and the appraisers' final cost estimate was $2,287,000. This figure was used to revise the reimbursement rate, which was then retroactively applied to petitioner. As a result, $1,105,433 in overpayments was recouped from petitioner.

In this CPLR article 78 proceeding, petitioner sought, *inter alia,* annulment of the rate revision, contending that the Department's use of the Marshall valuation method violated respondent Commissioner of Health's regulations. According to petitioner, while the Marshall valuation is of general application, the regulations called for a cost estimate based on the actual cost of similar facilities constructed at approximately the same time in the New York City area. Supreme Court agreed and annulled the rate revision, but declined to order respondents to refund to petitioner the amounts previously recouped. Both sides have appealed.

The language of an old regulation and a current regulation

are at issue here. The old regulation, effective January 1, 1976 through September 28, 1977, provided that in determining the allowed facility costs "the commissioner shall, based on approved project costs or approved book values of facilities of comparable age, size, location and condition, assign an allowed facility cost" (10 NYCRR former 86-2.21 [e] [9]). The current regulation, effective September 28, 1977, provides that "the commissioner may estimate the original fair and reasonable cost of the facility with due regard for the fair and reasonable cost of facilities of comparable age, size, location and condition" (10 NYCRR 86-2.21 [g]). Our consideration of the language of these regulations leads us to conclude that Supreme Court interpreted them too narrowly and that the regulations do not prohibit the Department from using a valuation method such as the Marshall method in estimating original costs of facilities. The regulations do not specify any particular method of valuation which must be used; they specify only that the Department must consider the cost of comparable facilities in making the valuation. While Supreme Court apparently assumed that the Marshall valuation method does not take into account the cost of comparable facilities, the record does not bear out this assumption. Accordingly, we cannot say that the Department violated the regulations by using the Marshall valuation method. Since the Department's interpretation of the regulations is neither irrational nor unreasonable, it should be upheld (see, Matter of Howard v Wyman, 28 NY2d 434, 438; Matter of Reader's Digest Assn. v State Tax Commn., 103 AD2d 926).

Nevertheless, we are persuaded that the determination should be annulled because the Department failed to provide petitioner with a hearing on the rate revision. Under the applicable regulations, when a rate revision is disputed the matter is presented to a rate review officer, who determines whether a factual issue exists and, if so, orders that a hearing be held (see, 10 NYCRR 86-2.14 [b] [1], [2]). In this case, there clearly are factual issues with regard to petitioner's rate revision, and the rate review officer should have ordered a hearing. Contrary to respondents' assertions, annulment is the proper remedy for the failure to order a hearing in a case such as that presented here (cf., Matter of Rockville Nursing Center v Axelrod, 86 AD2d 515).

Finally, with regard to petitioner's cross appeal, we find that Supreme Court properly refused to order retroactive application of the annulment of the rate revision so that

petitioner could recover the funds which the Department previously recouped as overpayments. It is well settled that the State need not hold a hearing before acting to recoup Medicaid payments *(Clove Lakes Nursing Home v Whalen,* 45 NY2d 873, 874-875). Annulment of the instant determination in order that a hearing might be held places this matter in the same posture as any other matter in which the Department seeks recoupment prior to a hearing. Accordingly, petitioner is not entitled to retroactive application of the annulment herein.

CASEY, WEISS, YESAWICH, JR., and LEVINE, JJ., concur.

Judgment modified, on the law, without costs, by remitting the matter to respondents Commissioner of Health and Department of Health for a prompt hearing with regard to petitioner's Medicaid realty reimbursement rate, and, as so modified, affirmed.